IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| Continental Resources, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER RE MOTION FOR** |
| | ) | **A PROTECTIVE ORDER** |
| vs. | ) | **QUASHING A SUBPOENA** |
| | ) | |
| C&D Oilfield Services, Inc., | ) | |
| | ) | Case No. 1:13-cv-154 |
| Defendant. | ) | |

Before the court is a motion by Ms. Cassandra Stevahn ("Stevahn") and her employer EMC Insurance Companies ("EMC"), both nonparties, seeking relief pursuant to Fed. R. Civ. P. 26(c)(1) & 45(d)(3) from a subpoena that plaintiff Continental Resources, Inc. ("Continental") caused to be issued for the taking of Stevahn's deposition and for production of EMC's claim file for the above case. Defendant C&D Oilfield Services, Inc. ("C&D") filed a response joining in the motion. A hearing on the motion was held on July 8, 2015.

I.  **BACKGROUND**

Continental retained C&D to do work on one of its oil and gas wells in North Dakota. On or about January 28, 2012, there was a spill of contaminated fluid and a fire in an area adjacent to the well that resulted in Continental incurring costs for the response by the local fire department, the rebuilding of a fence, and the remediation of the contaminated soils. Continental alleges that the spill and fire were C&D's fault.

Continental did not make a demand upon C&D for reimbursement of the costs it incurred until on or about February 5, 2013, when it forwarded a demand letter authored by one of its senior

1

litigation attorneys. While the record is unclear, it appears the letter may have been sent directly to both C&D and EMC, but, even if it was not, C&D forwarded a copy to EMC within a matter of days.

Upon EMC's receipt of the letter, Stevahn (EMC's assigned adjustor) obtained the fire report prepared by local authorities. Also, on February 13, 2013, she took a recorded statement from C&D's two principals.

Sometime soon thereafter, Stevahn hired expert Peter Smith and the company with whom he is employed (ECC Horizon) to conduct an investigation. Before Smith did any substantive work, Stevahn also retained attorney Paul Sanderson to represent C&D. Sanderson, in turn, formally engaged Smith as well. Smith then proceeded with his investigation, which included a site visit where he was accompanied by Sanderson. Eventually, Smith prepared a report that was directed to both Sanderson and EMC.

When C&D/EMC took the position that Continental's demands were without merit, Continental instituted this action on December 16, 2013. In its complaint, Continental contends it is entitled to recover the amounts it expended on account of the fire and spill, alleging negligence, breach of the Master Service Contract between the parties, and breach of warranty.

Smith has been disclosed as a testifying expert by C&D and Continental has deposed him at length. Following Smith's deposition, Continental sent an e-mail to Sanderson on April 16, 2015, requesting that he make Stevahn available for a deposition on May 26, 2015, and inquiring whether he would accept service on her behalf. Sanderson responded the next day, April 17, 2015, stating that Stevahn would be available on that date and that he would accept service.

Continental forwarded the actual subpoena and notice to take Stevahn's deposition to

Sanderson on May 8, 2015. On May 14, 2015, Sanderson emailed Continental's attorney back stating he was not authorized to accept service on Stevahn's behalf and providing the information where Stevahn could be served. Continental then had Stevahn served with a subpoena requiring that she give testimony and produce the following documents:

> Your entire file in reference to the above matter including; any analysis of the claim; all claim notes' all correspondence with Paul Sanderson; all correspondence with Peter Smith, and all correspondence with C&D Oilfield Services; all correspondence with Continental Resources, Inc.; all correspondence with ECC Horizon; all materials provided to you by ECC Horizon and/or Peter Smith; all documents providing guidance to you in regard to claims handling and/or environmental remediation.

(Doc. No. 29-1, p. 4). Service was effectuated on May 18, 2015.

EMC retained separate counsel to respond to the subpoena. EMC and Stevahn served Continental with their joint response and objections on May 19, 2015. The next day they filed the present motion for a protective order seeking to quash the subpoena on the grounds that the information being sought is, for the most part, work-product and/or attorney-client privileged and, to the extent not, irrelevant.

C&D filed a response/joinder to EMC's motion on June 3, 2015. As discussed later, Continental claims that C&D waived any objections by not asserting them until after the time specified in the subpoena for compliance.

In an affidavit filed in support of the motion, Stevahn states that the only information she provided expert Smith is the fire report, the statement taken from the two C&D principals, and Continental's demand letter. Smith's deposition testimony is consistent with that account. Nevertheless, Continental is suspicious, arguing that Stevahn likely provided more. In fact, Continental believes that expert Smith was directed to "gin up" a basis for denying Continental's

3

claim and that it will be able to uncover proof of this if it is able to depose Stevahn. This is belied, however, by what Smith testified to in his deposition, and Continental has offered nothing but rank speculation to the contrary.

## II. DISCUSSION

### A. Overview

In order to provide some perspective, it is helpful first to consider what ultimately is at issue in this case. So far as the court can determine it is: (1) whether some act or acts on the part of C&D caused the event that Continental claims resulted in the damages it suffered; (2) whether the contaminated soil (the remediation of which is where the big dollars are in this case) was the result of the event at issue or whether it was the result of some earlier spill or migration of contaminants that was not the fault of C&D; and (3) whether Continental went beyond what was reasonably required in its remediation efforts.

What is not at issue, however, is whether EMC did a good or bad job in handling the claim being asserted against C&D. So, from this perspective, much of what Stevahn has done in this case is likely either irrelevant to the ultimate issues or inadmissible. For example, Stevahn may have developed an opinion regarding the merits of Continental's claims, *i.e*, a "claim analysis" as demanded by Continental in its subpoena. Stevahn, however, is not being offered as an expert in the case and, in any event, would likely not be qualified to express an opinion regarding any of the scientific or forensic matters at issue.

While relevancy and admissibility do not define the outer boundary of discovery, these are factors the court can consider in controlling excessive and burdensome discovery. The court will return to this point later.

### B.     The claim of work product

Stevahn and her employer EMC assert that most, if not all, of the information sought by Continental's subpoena is work product within the meaning of Fed. R. Civ. P. 26(b)(3)(A), which reads as follows:

> **(3)** *Trial Preparation: Materials*.
> **(A)** *Documents and Tangible Things*.  Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial *by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)*.  But, subject to Rule 26(b)(4), those materials may be discovered if:
>     **(i)** they are otherwise discoverable under Rule 26(b)(1); and
>     **(ii)** the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

(italics added).

Continental presents a somewhat convoluted argument, the gist of which is that only C&D could assert the claim of work product and that its joinder in EMC's motion to quash was ineffectual because it came after the time for lodging objections to the subpoena as provided for under Fed. R. Civ. P. 45(d)(2)(B).  Continental acknowledges it could find no case directly on point.  This is not surprising since its argument fails on a number of fronts.

For one thing, the plain language of Rule 26(b)(3)(A) suggests that EMC can assert is own claim of work product.  See, e.g., Basinger v. Glacier Carriers, Inc., 107 F.R.D. 771, 773-74 (M.D. Pa. 1985).  And here, EMC's objections were timely - a point Continental does not dispute.

But, even putting that aside and assuming also that Rule 45's time requirement for filing objections applied to C&D's joinder in the motion for a protective order (a point with respect to which both Rule 45 and Rule 26 are silent since neither addresses the timing of a motion for a protective order by a party for a subpoena directed to a nonparty witness), the court concludes that

C&D could rely upon EMC's objections and motion insofar as presenting and preserving its objections given that EMC is a representative of C&D within the meaning of Rule 26(b)(3)(A). In fact, C&D probably need not have formally joined in EMC's motion.

Continental also contends that C&D waived any claim of work product or attorney-client privilege when Sanderson initially represented that Stevahn was available on the date specified and that he would accept service of Continental's subpoena on her behalf. The court disagrees, failing to understand how the mere agreement to accept service of the subpoena and make Stevahn available for a deposition amounts to a waiver of the right to object to the subject matter of the subpoena or any questions that may be asked at the deposition. Further, even if the court concluded that Sanderson's initial representations should have some consequential effect, waiver of the work-product doctrine and the attorney-client privilege would be too great a penalty to impose upon the client for such an attorney bobble.

Moving on from these thresholds objections, Rule 26(b)(3)(A) protects only material that is prepared "in anticipation of litigation." The test, at least in the Eighth Circuit, is expressed in Simon v. G.D. Searle & Co., 816 F.2d 397 (8th Cir. 1987) ("Simon"), where the court stated:

> Our determination of whether the documents were prepared in anticipation of litigation is clearly a factual determination:
>> [T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.
> 8 C. Wright & A. Miller, Federal Practice and Procedure § 2024, at 198-99 (1970) (footnotes omitted); see Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 604 (8th Cir. 1977), on rehearing, 572 F.2d 596, 606 (8th Cir. 1978) (en banc); The Work Product Doctrine, 68 Cornell L.Rev. 760, 844-48 (1983). The advisory committee's notes to Rule 26(b)(3) affirm the validity of the Wright and Miller test: "Materials assembled in the ordinary course of business * * * * or for other nonlitigation

purposes are not under the qualified immunity provided by this subdivision." Fed.R.Civ.P. 26(b)(3) advisory committee notes.

Id. at 401; see Chapman v. Hiland Operating, LLC, No. 1:13-cv-052, 2014 U.S. Dist. LEXIS 2671, at \*\*6-8 (D.N.D. Jan. 6, 2014).

The Eighth Circuit has yet to apply the foregoing test in a case involving a presuit investigation by a *liability* insurance carrier. And, the district courts within the Eighth Circuit have reached what arguably may be different results even though professing to follow the Simon test. Compare, e.g., Banks v. Wilson, 151 F.R.D. 109, 111-12 (D. Minn. 1993) (concluding that an investigation performed by defendant's auto liability carrier after plaintiff made a claim was "in anticipation of litigation" even though attorneys were not yet involved and a lawsuit was not filed until more than four years later) ("While not accepting that every document an insurer may prepare in the 'wake of an accident' is protected work-product, we do find it perceptually and logically implausible that an insured's statement, which is taken as a consequence of an occurrence which has engaged his insurance coverage, could be for a purpose other than anticipated litigation.") with Roy v. D.J.L. Homes, Inc., No. Civ. 07-4087, 2007 WL 8030880, at \*\*6-7 (D.S.D. Dec. 18, 2007) (statements taken by defendant's auto liability carrier some eight months before suit was commenced and some five days prior to plaintiff hiring an attorney were part of an investigation conducted in the ordinary course of business of an insurance company and not "in anticipation of litigation").

In this case, Stevahn stated in an affidavit that the work she did was in anticipation of litigation. While the court need not blindly accept this affidavit testimony, no investigation was made by EMC in the year following the spill and fire and it was only after Continental made its demand, authored by a senior litigation attorney, that Stevahn retained an attorney for C&D not long

7

after she gathered some initial information and retained an expert. In light of these facts and circumstances, the court concludes that, at least as of the time that counsel was hired for C&D, the work of Stevahn and EMC thereafter was "in anticipation of litigation."[1] Likewise, while it may be a closer question, the court believes the same is true for the initial work by Stevahn and EMC, given the preexisting demand by Continental and the fact this involved a third-party claim for liability. See, e.g., Underwriters Ins. Co. v. Atlanta Gas Light Co., 248 F.R.D. 663, 667-68 (N.D. Ga. 2008); Taylor v. Temple & Cutler, 192 F.R.D. 552, 558 (E.D. Mich. 1999); Banks v. Wilson, 151 F.R.D. 109; Basinger v. Glacial Carriers, Inc., 107 F.R.D. at 773-75.[2]

Continental correctly points out, however, that some information relating to retained experts loses its protection when the expert has been designated as one who will be testifying. For example,

---

[1] Following the retention of counsel, much of what Stevahn did and what is in EMC's claim file is likely covered by the attorney-client privilege - a point Continental now concedes with respect to any communications between Stevahn and Sanderson along with any notes made by Stevahn with respect to such communications. While the claims of work product in this case are governed by federal law, the claims of attorney-client privilege are governed by state law. E.g., Baker v. General Motors Corp. (In re General Motors Corp.), 209 F.3d 1051, 1053 (8th Cir. 2000) ("In this diversity case, we apply federal law to resolve work product claims and state law to resolve attorney-client privilege claims."). And, given the expansiveness of the attorney-client privilege under N.D. R. Evid. 502, it likely encompasses more than just the conversations between Stevahn and Sanderson and any notes of the conversations. Cf., e.g., Lamar Advertising of S.D., Inc. v. Kay, 267 F.R.D. 568, 579-81 (D.S.D. 2010) (addressing this subject in light of a similar formulation of the attorney-client privilege under South Dakota law and citing cases from other jurisdictions). The court need not address the attorney-client privilege further, however, given what the court ultimately concludes with respect to Continental's motion.

[2] While the court reaches these conclusions based on its application of the "because of" test in Simon, the court also notes that this is in keeping with the role of third-party liability coverage, which, in part, is to provide "litigation insurance." If C&D did not have the insurance, it likely would have employed counsel to address Continental's demands and, if it had done that, then we likely would not be having this discussion.
   Continental contends that it should be entitled to get all of Stevahn's and EMC's work because it was an additional insured under C&D's policy but has failed to provide any evidence of the extent of its claimed coverage. Stevahn acknowledges that Continental is an additional insured for certain purposes but contends it is limited to indemnity for any claims, demands, judgments, defense costs, or suits and that no claim had been brought against Continental triggering coverage. Without more, Continental has failed to demonstrate that it had any right to make a direct claim upon EMC. And, while this is sufficient to reject Continental's argument that the court should look to cases addressing the work-product doctrine in the context of first-party insurance coverage instead of liability coverage for third-party claims, the court suspects that, if Continental believed it could assert a direct claim against EMC, it would already have done so. Also, Continental ignores that EMC likely was contractually obligated to provide a defense to C&D, irrespective of whatever coverage Continental may have had, and to have its interests dealt with separately.

8

the testifying expert's report must be disclosed as provided under Rule 26(a)(2). Also, Rule 26(b)(4)(C) requires disclosure of communications with an expert that:

> (i) relate to compensation for the expert's study or testimony;
>
> (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
>
> (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

Fed. R. Civ. P. 26(b)(4)(C)(i)-(iii). Otherwise, communications with a testifying expert are not discoverable under Rule 26(b)(4)(C).

Continental argues that since the prohibition of discovery in Rule 26(b)(4)(C) only refers to communications between a "party's attorney" and the expert, this by implication makes any communications between Stevahn and Smith discoverable. The court does not agree. Rule 26 was amended in 2010 to more specifically address what is discoverable in terms of drafts of expert reports and communications with experts to eliminate some of the more contentious disputes about these subject matters. See Fed. R. Civ. P. 26 advisory committee's notes to 2010 amendments. The advisory committee notes to the amendments state that the new provisions were not meant to exclude further protection under other doctrines "such as privilege or independent development of the work-product doctrine." Id. And here, the court concludes that the communications between Stevahn and Smith that are work product within the meaning of Rule 26(b)(3)(A) do not lose their protected status by Smith having been designated a testifying expert, except to the extent that the communications are one of those set forth in (i)-(iii) of subpart (b)(4)(C), even though that subpart nominally references only communications between an attorney for the party and the expert.[3]

---

[3] In fact, it may be possible to make an argument that the attorney-client privilege applies to some of the conversations between Stevahn and Smith after attorney Sanderson was retained given the expanse of the definition of

In this case, notwithstanding the foregoing, Sanderson has agreed that he will make Smith's entire file available to Continental, save perhaps his own communications that are protected by Rule 26(b)(4)(C)(i)-(iii). Further, based on Stevahn's representations in her affidavit and what Smith testified to in his deposition, Stevahn did not ask Smith to make any assumptions in expressing his opinions nor did she provide him with facts or data other than the fire report, the recorded statement of C&D's two principals, and Continental's demand letter - material that Continental already has been given. In terms of Rule 26(b)(4)(C)(i)-(iii), this leaves only those communications with Smith that discuss his rate of compensation - information that the court assumes will be in Smith's file and will be produced if it has not already been turned over.[4]

There is one final matter. Smith testified during his deposition that while he was working on this particular assignment, he made a marketing call upon EMC and presented a PowerPoint describing the services that ECC Horizon has to offer. Continental's attorney asked Smith whether he would provide him with a copy of the PowerPoint and Smith agreed that he would. Apparently, the PowerPoint presentation was not produced and Continental now argues it should be provided by EMC.

Obviously, the PowerPoint is not protected work product within the meaning of Rule 26(b)(3)(A). On the other hand, there is a question as to whether it is covered by the subpoena since it asks for file material related to the present litigation and general marketing material may fall outside of that. To cut to the chase, however, the court will order that C&D turn over a copy of the PowerPoint notwithstanding any objections of C&D and EMC. C&D contends the PowerPoint is

---

the privilege in N.D. R. Evid. 502.

[4] The court suspects Continental already has the information since its counsel did not inquire of Smith about his rate of compensation during his deposition.

irrelevant because any use or reference to it at trial would not be permitted because it would introduce the topic of insurance to the jury. C&D is mistaken, however, that any reference to insurance at trial is necessarily prohibited. For example, Fed. R. Evid. 411 provides that evidence of insurance coverage is not admissible upon the issue of liability, but that the rule does not require the exclusion of evidence of insurance against liability when offered "for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control." Whether Continental should be allowed to use or reference the PowerPoint during cross-examination of Smith at trial to demonstrate bias is a decision that the trial judge will have to make later, which might very well involve a balancing of interests under Fed. R. Evid. 403 and a limiting instruction if examination about it is allowed. However, for purposes of discovery, it should now be produced.[5]

In short, given the protections afforded to work product, Stevahn would not be required to answer much at a deposition other than perfunctory background questions. Further, in terms of the ultimate issues, much of what she would have to say is either irrelevant or inadmissible on other grounds. The same conclusions apply with respect to EMC's claim file.

### C. The court's obligation to police burdensome and excessive discovery

Continental is not entitled to chase down every rabbit hole in hopes that it might uncover some nugget of information that it believes may potentially be useful. In fact, courts are required to diligently police discovery to insure that it does not go beyond what is reasonable given the circumstances and needs of the case. In particular, Rule 26(b)(2)(C) commands that a court "must" limit both the frequency and extent of discovery when it determines that:

---

[5] In so deciding, the court has not concluded that marketing material used by an expert is always discoverable. Here, the marketing pitch was made to EMC while the expert was performing work for it for this particular case. Further, the expert testified during his deposition that approximately 95% of the work done by his firm is for insurance companies.

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

In this case, Continental has received Smith's written report and has deposed him at length about his opinions, their factual basis, and matters touching upon Smith's potential bias. According to C&D, Continental has also been given most of what is in Smith's file, but, to the extent there may be more, the additional file material will be provided as ordered below. Finally, Continental will be provided with a copy of the marketing PowerPoint that it has already questioned expert Smith about on the odd chance that it might provide some additional point for cross-examination *if* Continental is permitted to get into the matter at all.

With that, Continental will have obtained what it reasonably needs to prosecute its action and defend against Smith's opinions, and the remote likelihood of it obtaining something more of additional benefit is outweighed by the burden and expense of a Stevahn deposition and more wrangling over EMC's claim file. Further, it is not just the cost and expense of the deposition and, perhaps, EMC having to generate a privilege log. There is likely to be further arguments over precisely what questions would have to be responded to and documents produced requiring the court's further involvement. For example, during the hearing, Continental's attorney was unwilling to concede that any claims analysis performed by Stevahn is necessarily protected work product.

Consequently, the court will exercise its substantial discretion under Rule 26(b)(2)(C) to grant a protective order for the benefit of EMC and C&D and quash Continental's subpoena to Stevahn. Further, the court would reach this result even if it more narrowly drew the line as to what is covered by the work product doctrine given what already has been discovered and the marginal relevancy and usefulness of any information that is likely to be obtained.

### III.    ORDER

**IT IS ORDERED** that the Motion to Quash Subpoena and for Protective Order (Docket Nos. 28 & 31) is **GRANTED** subject to the following:

1. C&D shall within twenty days produce expert Smith's file in accordance with its agreement to do so during the hearing on this pending motion and information relating to Smith's compensation if is not already in Smith's file.

2. C&D shall within twenty days produce the PowerPoint presentation referenced in Smith's deposition.

3. Continental can seek permission from the court later to depose Stevahn and possibly obtain specific documents from EMC (but certainly not its entire claim file), if after receiving the material that will be forthcoming, it can demonstrate to the court some substantial likelihood of there being something more of meaningful benefit to obtained.

Dated this 20th day of July, 2015.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court